UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **INNOVATIVE PRODUCTION SYSTEMS, LLC,** | **2:21-CV-11613-TGB-APP** |
| Plaintiff, | **ORDER DENYING MOTION TO DISMISS** |
| vs. | |
| **HOSKIN & MUIR, INC.,** | |
| Defendant. | |

Plaintiff Innovative Production Systems, LLC,[1] ("IPS") a Michigan corporation, brings this action against Defendant Hoskin & Muir, Inc. ("HMI"), an out-of-state corporation, alleging an anticipatory breach of contract under Michigan law. The Defendant has filed a Motion to Dismiss for lack of personal jurisdiction, or, in the alternative, to transfer this case to the United States District Court for the Western District of Kentucky. For the reasons that follow, the Motion to Dismiss is **DENIED**.

---

[1] The Clerk is directed to correct the case caption to properly reflect Plaintiff's name as listed here and, in the Complaint, "Innovative Production Systems, LLC".

## I.   BACKGROUND

Plaintiff IPS is a limited liability company with its sole place of business in Michigan. ECF No. 9, PageID.103. Plaintiff is engaged in the business of designing, assembling and selling capital equipment for manufacturers. ECF No. 1, PageID.1. Defendant HMI is alleged to be a corporation, also operating as HMI Glass, with its principal place of business in the State of Kentucky. ECF No. 5-1, PageID.24. Defendant HMI is a manufacturer and supplier of custom glass products specializing in shower enclosures. *Id.* at PageID.25.

Defendant HMI was introduced to Plaintiff through a consultant, Mr. Paul Smith,[2] whom Defendant had retained. Mr. Smith recommended Defendant purchase a specialized robotics system from Plaintiff for its manufacturing process. ECF No. 5-1, PageID.26. In April 2020, HMI contacted Plaintiff for a request to evaluate its manufacturing and warehousing facility and to assess whether HMI's facility could benefit from an automated system. ECF No. 9, PageID.104. On June 20, 2020, Plaintiff provided a quote to supply a robotics system that would assist with manipulating sheet glass during manufacturing in HMI's facility. ECF No. 5-1, PageID.26. On June 24, 2020, Defendant HMI accepted Plaintiff's quoted offer by issuing a purchase order for the robotics system. ECF No 5-1, PageID.27.

---

[2] Mr. Smith was recommended to Defendant HMI by a consulting firm owned by Mr. Paul Bazely, who is also the owner of Plaintiff IPS.

Parties differ in their accounts of the events that happened next. Defendant alleges that through the purchase order, Plaintiff and Defendant agreed to a delivery date of fourteen weeks. ECF No. 5-1, PageID.27. Defendant alleges that this deadline passed without the agreed-upon delivery. By April 2021, Plaintiff had still not given any assurances that a robotics system could work as promised or that it was capable of delivering and installing a fully functional system. ECF No. 5-1, PageID.28. Defendant says it therefore chose to terminate the contract on April 2, 2021. ECF No. 5-1, PageID.27. Plaintiff alleges that no deadline was specified in the purchase order and that Defendant's own actions delayed progress. ECF No. 9, PageID.108. It further alleges that various changes to the equipment required by Defendant were significant and required substantial work to implement. ECF No. 9, PageID.108.

Plaintiff now claims that Defendant breached the terms of the contract by indicating it wanted to cancel the agreement. Rather than submit an Answer, Defendant HMI filed a Motion to Dismiss. ECF No. 5. The motion has been fully briefed, and the Court indicated that it would resolve the motion without oral argument. ECF No. 8.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(2) authorizes the filing of motions to dismiss for lack of personal jurisdiction. When "[p]resented with a properly supported 12(b)(2) motion and opposition, the court has three procedural alternatives: it may decide the motion upon the

3

affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any factual questions." *Theunissen v. Matthew*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). "The court has discretion to select which method it will follow, and will only be reversed for abuse of discretion." *Id*.

When a defendant challenges personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing the existence of personal jurisdiction. *See Int'l Tech. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997). In the face of a properly supported motion for dismissal, the "plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *E &M Props. v. Razorgator, Inc.*, No. 08-CV-10377, 2008 WL 1837261, at *2 (E.D. Mich. Apr. 23, 2008) (quoting *Theunissen*, 935 F.2d at 1458).

Because the Court has not conducted an evidentiary hearing, it will construe the facts in the light most favorable to Plaintiff and may not consider conflicting facts offered by Defendant. See *Neogen Corp. v. Neo Gen Screening*, Inc., 282 F.3d 883, 887 (6th Cir. 2002). Further, in the absence of an evidentiary hearing, "the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal." *Theunissen*, 935 F.2d at 1458.

4

## III.   ANALYSIS

Plaintiff alleges a single cause of action for breach of contract against an out-of-state Defendant. Defendant HMI makes two arguments in its Motion to Dismiss: (1) the Court does not have personal jurisdiction over it, and (2) even if it does, this action should be transferred to the Western District of Kentucky. The Court will address each argument in turn.

### A. Personal jurisdiction

A federal court sitting in diversity applies the law of the forum state, subject to the limits of the Due Process Clause of the Fourteenth Amendment, to determine whether specific personal jurisdiction exists over a defendant.[3] *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir. 1996) (citing *Reynolds v. International Amateur Athletic Federation*, 23 F.3d 1110, 1115 (6th Cir. 1994)). To exercise specific personal jurisdiction over an out-of-state party, a court must engage in a two-step analysis: (1) the court must determine whether any of Michigan's relevant long-arm statutes authorize the exercise of jurisdiction over Defendants, and, if so, (2) the court must determine whether exercise of that jurisdiction comports with constitutional due process. *Air Products & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007).

---

[3] Plaintiff does not contend that general personal jurisdiction applies. ECF No. 1, PageID.2. The Court agrees that there is no basis for general personal jurisdiction over HMI.

5

### 1. **Michigan's long-arm statute**

As relevant to this case, Michigan law permits the state to exercise specific personal jurisdiction over a corporation and to render personal judgments against such corporation "arising out of . . . the transaction of any business in the state." MCL 600.715(1). Additionally, courts may exercise specific personal jurisdiction when a corporation enters a contract where the services are to be performed or materials are to be furnished in Michigan. MCL 600.715(5). The Sixth Circuit has recognized that the statute is intended to be liberally construed in favor of allowing specific personal jurisdiction especially when an ordinary commercial transaction is involved. *Citizens Bank v. Parnes*, 376 F. App'x. 496, 501 (6th Cir. 2010) (citing *Sifers v. Horen*, 18 N.W.2d 623, 627 (Mich. 1971)). Business dealings in Michigan need not be extensive or prolonged, since the Michigan statute allows "any" business dealings to suffice, and "any" includes even the slightest amount. *Lafarge Corp. v. Altech Environment, U.S.A.*, 220 F. Supp. 2d 823, 828 (E.D. Mich. 2002); *see also Sifers*, 18 N.W.2d at 627. The Sixth Circuit has stated that the "arising out of" requirement is satisfied "[when] the alleged economic harm that forms the basis of the suit are directly related to a company's transaction of business in Michigan." *Neogen Corp. v. Neo Gen Screening, Inc*, 282 F.3d 883, 888 (6th Cir. 2002).

In the present case, Defendant's conduct in contacting and signing a contract with Plaintiff meets the statutory requirements for the

application of Michigan's long-arm statute. *See, e.g., General Motors Co. v. Dinatale*, 705 F. Supp. 2d 740, 746-747 (E.D. Mich. 2010). Further, the manufacturing and assembly of the robotic system was to be completed entirely at a location in Farmington Hills, Michigan. ECF No. 9, PageID.108. The Court agrees with Plaintiff that Michigan's long-arm statute applies to the contract and satisfies the first prong of the specific personal jurisdiction test.

### 2. Application of *Southern Machine* factors for Due Process

By requiring that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," the Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Burger King Corp. v. Rudzwicz*, 471 U.S. 462, 472 (1985). The Sixth Circuit has established a three-part due process inquiry for determining whether specific jurisdiction may be exercised over an out-of-state defendant:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir. 1968); *see also Air Products & Controls, Inc.,* 503 F.3d 544, 550 (6th Cir. 2007); *Mr. Vapor Wholesale, LLC v. H.S. Wholesale Ltd.,* 2020 WL 4700825, \*3 (E.D. Mich. 2020).

Defendant argues that even if Michigan's long-arm statute applies, these requirements are not satisfied, and therefore the exercise of limited personal jurisdiction would violate its constitutional due process rights. ECF No. 5-1, PageID.31. The court will address each *Southern Machine* factor in turn to determine whether this is the case.

**a) Purposeful availment**

A plaintiff establishes "purposeful availment" when it demonstrates that the defendant's contacts proximately result from actions *by the defendant* and create a "substantial connection" with the forum state. *Air Prods.,* 503 F.3d at 551 (citing *Burger King,* 471 U.S. at 475). Where a defendant has created "continuing obligations" between himself and residents of the forum, he has availed himself of the privilege of conducting business there. *Id.* Although entering into a contract with an out-of-state party *alone* does not automatically establish sufficient connections, the presence of certain factors in addition to the contract will generally constitute purposeful availment. *Id.* Factors to consider include "prior negotiations and contemplated consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.*

8

In the present case, Defendant argues it has not purposefully availed itself of any privilege to do business in Michigan because it has no connection to Michigan other than the contract with Plaintiff. ECF No. 5-1, PageID.33. But parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to regulation and sanctions in the other state for the consequences of their activities. *Burger King*, 471 U.S. at 473 (citing *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647 (1950)). Defendant, on the recommendation of its full-time consultant, Mr. Paul Smith, contacted Plaintiff to inquire whether a robotic system could be useful in its manufacturing business. ECF No. 5-1, PageID.26. It subsequently signed a contract with Plaintiff. While Defendant's decision to reach out to conduct business in Michigan is insufficient standing alone to establish purposeful availment, it is a factor that weighs in favor of finding specific personal jurisdiction. Additionally, the contract contemplated work that would be done in Michigan, and involved contacts and negotiations back and forth between Kentucky and Michigan.

As mentioned above, the record suggests that Mr. Smith had affiliations both with Defendant HMI and the owner of Plaintiff IPS. Plaintiff has submitted records showing that Paul Smith was an "associate" of JTI Consulting Services, a company owned by Paul Bazely, who is also the owner of the Plaintiff IPS. On behalf of JTI, Mr. Bazely sent a letter to HMI proposing that Mr. Smith work as a consultant for

9

Defendant HMI in July of 2019. HMI subsequently hired him to be their full-time consultant. ECF No. 9-3, PageID.131. HMI paid JTI, and JTI paid Mr. Smith. ¶ 10, ECF No. 9-2. Smith, working as HMI's full-time consultant, recommended that HMI hire Plaintiff IPS to automate HMI's factory in Kentucky.

Effectively, it would appear from the limited available record that HMI was paying one Bazely company for the services of its consultant, and that consultant then recommended to HMI that it also pay another Bazely company, Plaintiff IPS, to provide automation technology for its plant. Defendant argues that this calls into question whether it truly "reached out" to a Michigan company. ECF No. 13, PageID.185-86. But on a motion to dismiss, the Court must construe the facts in the light most favorable to Plaintiff, which (according to Bazely's affidavit) are that Smith had no financial interest in Plaintiff IPS, and that neither JTI nor Bazely had any control over the work Smith did for HMI. ¶¶ 9, 11, ECF No. 9-2. Bazely states that the "entire amount" paid by Defendant to JTI for the consulting services was then passed on directly to Smith. *Id.* at ¶ 10. He further indicates that the origin of this arrangement was that a third-party investor *in HMI* wanted Mr. Smith to work for HMI, and Mr. Smith needed sponsorship from a United States company to do so because he is a Canadian citizen, which JTI was able to provide. *Id.* at ¶ 9. Accepting Plaintiff's contentions that Smith acted independently and was not in any way influenced by IPS, the Court cannot conclude at this

10

stage that Smith's involvement somehow invalidates Defendant's contact with Plaintiff as "reaching out" to Michigan. And even if Smith did recommend that Defendant HMI hire Plaintiff, the record suggests that Defendant HMI ratified the decision to hire Plaintiff for the automation project and actively pursued the contract, proof of an independent course of "reaching out" conduct.

Defendant also argues that because its employees never visited Michigan, Defendant lacks sufficient physical connection with the state to exercise limited personal jurisdiction. However, recognizing that a substantial amount of business is transacted solely by mail and wire communications, the Supreme Court has consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction. *Burger King*, 471 U.S. at 476. It is the quality of the contacts that demonstrates purposeful availment, not their number or their status as pre-or-post contractual communications. *Air Prods.*, 503 F.3d at 551 (quoting *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1301 (6th Cir. 1989)). Plaintiff estimates that there were over 100 phone calls and over 150 e-mails and text messages initiated by the Defendant regarding the contract or modifications it wished to make to the robotic system. ECF No. 9, PageID.108. These changes allegedly included a new cart design, the addition of a cardboard and dunnage handler, and the addition of a glass washer. *Id*.

In *Light Source*, the Defendant's overt solicitation of a company known to be in Michigan, where the contacts between parties were in furtherance of their contractual relationship, satisfied the purposeful availment requirement. *Light Source, Inc. v. Display Dynamics, Inc.,* No. 09-14268, 2010 WL 2351489, at *1 (E.D. Mich. June 8, 2010). While the parties in *Light Source* had engaged in prior contacts, the court reiterated that the quality of the contacts, regardless of the quantity, is determinative. *Id*. The Court finds that the *Light Source* rationale is persuasive and that the similar quality of the contacts between Plaintiff and Defendant here meets the purposeful availment requirement.

### b) "Arising from"

The second prong of the *Southern Machine* test requires that Plaintiff's cause of action "arise from" Defendant's contacts with the forum state. The requirement is satisfied where the "cause of action, of whatever type, has a substantial connection with the defendant's in-state activities." *Chrysler Corp. v. Uptown Motors-Hartford, Inc.*, 173 F.3d 854, 1999 WL 196558, *6 (6th Cir. 1999). The Sixth Circuit has noted that this standard is lenient. *Bird v. Parsons,* 289 F.3d 865, 875 (6th Cir. 2002) (holding that even the alleged marginal contacts of registering an internet domain name in a forum state meet the "arising from" threshold).

Plaintiff's cause of action here is substantially related to Defendant's in-state activities. Plaintiff alleges a breach of contract,

claiming Defendant has failed to pay current and past amounts owing and has also failed to cooperate with Plaintiff's efforts to complete the robotics system in Michigan. ECF No. 1, PageID.4. Therefore, the Plaintiff's claim arises from Defendant's in-state activities.

### c) Reasonableness

The third prong of the due process analysis considers whether the defendant's activities were connected enough with Michigan to make the exercise of jurisdiction over the defendant reasonable. *W.H. Froh, Inc. v. Domanski,* 651 N.W.2d 470, 478 (Mich. Ct. App. 2002) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). This inquiry determines "whether Michigan's exercise of jurisdiction comports with traditional notions of fair play and substantial justice." *Id*. Where the first two criterion of the due process inquiry are met, "an inference of reasonableness arises." *Id*. In determining whether the exercise of jurisdiction is reasonable, the court should consider, among others, the following factors:

> (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy.

*CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1268 (6th Cir. 1997) (citing *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169-70, (6th Cir. 1988)). While Defendant argues there would be a substantial burden for it to litigate in a jurisdiction where it has no operations, Plaintiff is

correct that this burden is minimal. Litigation across state lines, especially with the increased reliance on remote proceedings since the onset of the COVID-19 pandemic, is commonplace and presents little added cost. ECF No. 9, PageID.119. Michigan has a strong interest in litigation involving Michigan companies when the underlying facts entail significant performance within this state. That interest supersedes another forum's interest in this litigation. *Salom Enterprises, LLC v. TS Trim Industries, Inc.*, 464 F. Supp. 2d 676, 687 (E.D. Mich. 2006).

Considering all of these factors, the Court finds that exercising specific jurisdiction over the Defendant would not result in a due process violation. As a result, personal jurisdiction in this case is proper, and Defendant's motion is denied as to that issue.

## B. Transfer to the Western District of Kentucky under 28 USC § 1404(a)

Defendant argues that even if the Court determines specific personal jurisdiction exists, the Court should transfer this matter to the United States District Court for the Western District of Kentucky.

A district court may transfer any civil action to any other district or division where it might have been brought. 28 U.S.C. § 1404 (a). The Supreme Court has stated that "a district court can transfer 'any civil action' if the transfer is warranted by the convenience of parties and witnesses and promotes the interests of justice." *Van Dusen v. Barrack*,

14

376 U.S. 612, 616 (1964). In deciding whether to transfer a case to a new venue under this statute, courts must determine whether:

> (1) the action could have been brought in the proposed transferee-court; (2) a transfer would promote the interests of justice; and (3) a transfer would serve the parties' and witnesses' convenience.

*Thomas v. Home Depot, U.S.A., Inc.,* 131 F. Supp. 2d 934, 936 (E.D. Mich. 2001) (citing *Rowe v. Chrysler Corp.*, 520 F. Supp. 15, 16 (E.D. Mich. 1981)). The movant must make this showing by a preponderance of the evidence. *Id.* Both parties agree that this matter could have been filed in the Western District of Kentucky, so the Court's analysis will be confined to prongs (2) and (3). ECF No. 9, PageID.120; ECF No. 5-1, PageID.41.

In analyzing these two prongs, courts must weigh: (1) parties' convenience; (2) witnesses' convenience; (3) relative ease of access to sources of proof; (4) availability of process to compel attendance of unwilling witnesses; (5) cost of obtaining willing witnesses; (6) practical difficulties associated with trying the case quickly and inexpensively; and (7) interests of justice. *Thomas,* 131 F. Supp. 2d at 936.

In applying this test, the Court does not find Defendant's arguments persuasive that any factor weighs so heavily in its favor so as to establish by a preponderance that Kentucky is a better venue. ECF No. 5-1, PageID.42-43. There are no special facts in this case that make

15

it different than any other cross-country business dispute.[4] Such matters are routinely litigated across state lines without concern that the "interests of justice" are not served. On the other side of the scale, Plaintiff points out that, as to the factor of the availability of process to compel attendance of unwilling witnesses, the third-party manufacturer for the robotics is a material witness that is also located in Michigan and its employees would not be subject to compulsory process in Kentucky. Considering all of these factors, therefore, the court finds that it would be improper to transfer venue in this matter.

**CONCLUSION**

Defendant's Motion to Dismiss is **DENIED.**

**IT IS SO ORDERED,** this 11th day of March, 2022.


BY THE COURT:


/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge

---

[4] Witnesses' convenience is one of the most important factors in determining whether to grant a motion to change venue. *Thomas,* 131 F. Supp. 2d at 937 (citing *Hunt v. TACA Int'l Airlines, S.A.,* No. 93-3723, 1994 WL 285023 at 2* (E.D. La. 1994)). Defendant contends that witness convenience is impacted as the principal witnesses to the agreement are located in Kentucky. ECF No. 5-1, PageID.42. However, Plaintiff notes that there are also material witnesses in Michigan. ECF No. 9, PageID.121.